**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| **JOHN C. KERMODE, Ph.D.** | **PLAINTIFF** |
| **V.** | **CIVIL ACTION NO. 3:09-cv-584-DPJ-FKB** |
| **UNIVERSITY OF MISSISSIPPI MEDICAL CENTER; JERRY M. FARLEY, SR., Ph.D.; and MISSISSIPPI INSTITUTIONS OF HIGHER LEARNING** | **DEFENDANTS** |

**ORDER**

This constitutional and state-law tort action is before the Court on the motion of Defendant Jerry M. Farley, Sr., to dismiss claims against him in his individual capacity [8]. Having considered the parties' submissions and the applicable authority, the Court finds the motion should be granted in part and denied in part as explained below.

**I.    Facts & Procedural History**

Plaintiff John C. Kermode, Ph.D., was terminated from employment as Professor of Pharmacology and Toxicology at the University of Mississippi Medical Center (UMMC) in late 2008.[1]  He had been a professor in the department since 1993 and gained tenure in 1999.

In 2006, female graduate student Sang Won Park did a research rotation in Plaintiff's lab. In December 2007, Park started training in Plaintiff's lab for a Ph.D. in Pharmacology and Toxicology.  In June 2008, Park began making statements "accus[ing] the Plaintiff of stalking her and/or otherwise harassing her" to UMMC personnel.  Compl. ¶ 13.  She also told a clinical fellow working the same lab "that the Plaintiff had 'tickled her.'" Compl. ¶ 15.

---

[1]The facts are taken from the Complaint unless otherwise indicated.

Defendant Jerry M. Farley, Sr., Ph.D., was Professor and Interim Chair of the Department of Pharmacology and Toxicology at the time of these events. He apparently became aware of Park's complaints and ultimately reported them to UMMC administrators. Kermode was terminated without a hearing on September 25, 2008. He requested a faculty grievance hearing, which was held on November 17, 2008. Park did not appear at the hearing, but Farley testified as to his knowledge of the conflict between Park and Kermode. The faculty grievance committee concluded, in its recommendation addressed to UMMC Vice Chancellor for Health Affairs Dan Jones, that "termination due to malfeasance, contumacious conduct, and for cause is unduly harsh." Ex. C to Pl.'s Resp. [11]. However, Vice Chancellor Jones affirmed the initial decision to terminate. On Plaintiff's appeal, the Board of Trustees of the Mississippi Institutions of Higher Learning (IHL) upheld the termination in February 2009.

Kermode filed suit in this court on September 25, 2009, alleging violations of his First and Fourteenth Amendment rights (Count I); violations of 42 U.S.C. §§ 1983, 1985, and 1986 (Count II); breach of contract and the implied duties of good faith and fair dealing (Count III); intentional and negligent infliction of emotional distress (Count IV); intentional interference with contract (Count V); defamation (Count VI); and civil conspiracy (Count VII). Defendant Farley moved to dismiss the claims against him in his individual capacity, and both parties submitted affidavits and other matters outside the pleadings. The Court exercises subject matter jurisdiction over the federal questions pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II.     Standard

Defendant Farley filed the instant motion to dismiss based upon qualified immunity with his own affidavit attached. Plaintiff's response insists the motion should be decided under the Rule 12(b)(6) standard; however, "out of an abundance of precaution" Plaintiff attached his own affidavit and supporting materials and also stated that he has not had "ample opportunity to conduct discovery" and "pursuant to Rule 56(f) . . . [he] would alternatively move the Court to . . . allow the parties to conduct appropriate discovery." Rule 12(d) describes the process by which courts can convert a motion under Rule 12(b)(6) to a motion for summary judgment under Rule 56. This Court exercises its discretion to exclude the evidence offered outside the pleadings and treat the motion as one arising under Rule 12(b)(6). *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 225 F. App'x 775, 783 (5th Cir. 2007) ("It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 (5th Cir. 1988); Fed. R. Civ. P. 12(b))).

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A claim has facial plausibility

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Analysis**

Defendant Farley asserts qualified immunity from Plaintiff's federal claims based on alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986. As to Plaintiff's state law claims, Defendant asserts qualified immunity and immunity under the Mississippi Tort Claims Act, Mississippi Code Annotated section 11-46-7(2).

   A.    Qualified Immunity

Qualified immunity is a shield from liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is "an entitlement not to stand trial or face the other burdens of litigation." *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has

4

adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001). When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).

Plaintiff asserts two bases for his § 1983 cause of action. First, he argues that the defendants interfered with his property interest in continued employment with UMMC based on his tenured status, as described in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Second, he avers that the defendants interfered with his constitutionally protected liberty interest in his own reputation by discharging him in a manner that stigmatized him and foreclosed future employment opportunities, as described in *Paul v. Davis*, 424 U.S. 693 (1976) and *Hall v. Board of Trustees of State Institutions of Higher Learning*, 712 So. 2d 312, 322–23 (Miss. 1998). Defendant does not dispute that these interests exist and, if violated, give rise to a claim under § 1983.

5

1.  Property Interest in Continued Employment

As noted, the Court will consider this claim under Rule 12(b)(6). Viewed in the light most favorable to Plaintiff, the facts as set forth in the Complaint are that a student's allegedly unfounded complaints of harassment were reported to Plaintiff's department chair Farley, who eventually reported them upward to UMMC administration and also testified about them to the faculty grievance committee. According to Plaintiff, Farley did not just report the student's allegations but made defamatory "unfounded and malicious interpretations" that he presented to UMMC administration as facts. Compl. ¶ 42. Plaintiff variously states that he was terminated by Vice Chancellor Jones "and other representatives" of UMMC (Compl. ¶ 6) and by Associate Vice Chancellor for Academic Affairs Dr. Helen Turner (Compl. ¶ 19), and that Dr. Jones affirmed the initial decision to terminate, which the Board of Trustees of the IHL upheld or "rubber stamped" (Compl. ¶ 24). As to Farley's role, Plaintiff avers that "UMMC and Defendant Farley had already determined that Dr. Kermode would be terminated . . . long before the requisite grievance hearing." Compl. ¶ 29(a).

Under Fifth Circuit precedent, only a final decisionmaker–not an individual who recommends termination to the final decisionmaker–can be liable under § 1983 for interfering with that interest. *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 605 (5th Cir. 2001) (holding that individual defendants who "did not fire [plaintiff] directly, but merely recommended her termination to the board, which made the final decision," could not be liable for § 1983 violation "no matter how unconstitutional their motives"); *see also Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004) (citing *Beattie* in holding only the final decisionmaker could be held liable under § 1983); *Bluitt v. Houston Indep. Sch. Dist.*, 236 F.

Supp. 2d 703, 729–30 (S.D. Tex. 2002) (citing *Beattie* in holding principal not liable under § 1983 for recommending termination to school board).

In this case, Farley's initial memorandum observed that he was not the decisionmaker. Plaintiff's response was often generic and never directly addressed this critical contention. In fact, Plaintiff seems to confirm that Farley was not the final decisionmaker. *See, e.g.*, Pl.'s Resp. at 10 ("[O]nly the defamatory and malicious statements of Defendant Farley were taken into consideration by UMMC's administration."); *id*. at 11 ("[B]ased on Defendant Farley's defamatory statements, the Plaintiff was summarily discharged."). These statements are consistent with the allegations of the Complaint, wherein Plaintiff contends that others made the ultimate decision. Compl. ¶¶ 6, 19, 24, 42. Any suggestion otherwise would likely be subject to dismissal under the *Iqbal* and *Twombly* pleading standards. Plaintiff has the burden with respect to Farley's claim to qualified immunity. He has not demonstrated that Farley violated his constitutional rights or acted without objective reasonableness by allegedly recommending termination to the ultimate decisionmakers. Accordingly, Farley is not liable for Plaintiff's § 1983 claim based on the termination decision.

        2.        Liberty Interest in Reputation

The theory Plaintiff asserts regarding his liberty interest in his reputation requires him to show "(1) that he has been stigmatized, (2) in or as a result of the 'discharge' process, and (3) that the stigmatization resulted from charges made public by his employer." *Ishee v. Moss*, 668 F. Supp. 554, 558 (N.D. Miss. 1987) (citing *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985); *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983)), *cited in Hall v. Bd. of Trs. of State Insts. of Higher Learning,* 712 So. 2d 312, 322–23 (Miss. 1998). Although Farley mentions in

7

passing that there is no proof of stigma (which is sufficiently pled), he focuses his argument on whether comments were published as required by the third prong of the test. He contends that they were not.

Unlike the termination issue, the potential fallacy with respect to the reputation claim is the failure to plead the claim with enough specificity.[2] More specifically, the question is whether the Complaint adequately addresses the publication element of the cause of action. Plaintiff at least touches on the issue when he avers that Farley continued to defame him "even since the departure of the Plaintiff from UMMC." Compl. ¶ 42. In *Ishee*, a case cited by Defendant Farley, the court held that "[d]isclosure within an agency may implicate a liberty interest if the disclosure is gratuitously made to persons with no responsibility for or interest in the matter disclosed." 668 F. Supp. at 559 (citation omitted). It is a close question whether paragraph 42 of the Complaint is sufficient to state a claim under *Iqbal*. The Court finds, however, that under the applicable standard, the statement is marginally adequate to survive a Rule 12(b)(6) challenge.[3]

The issue remains, of course, whether qualified immunity exists. As noted, both parties presented record evidence, although Plaintiff maintained that Rule 12(b)(6) should apply. Plaintiff also referenced Rule 56(f) in the event the Court concluded that the motion should be treated as a motion for summary judgment. Whether Farley is ultimately entitled to qualified immunity from the reputation claim appears to turn on whether he publicized statements that would stigmatize Plaintiff. Farley presents a factual argument that he did not publicize the

---

[2] As pled, the termination claim fails because Plaintiff averred that others made the final decision.

[3] Even if the motion was granted, a dismissal of this nature would generally be without prejudice.

comments. As discussed below, Farley remains a viable defendant as to Plaintiff's state law defamation claim, a claim that also requires proof of publication. *Jernigan v. Humphrey*, 815 So. 2d 1149, 1153 (Miss. 2002) (stating essential elements of defamation claim as including "unprivileged publication"). As such, Farley is subject to discovery in his individual capacity on the publication issue, which undermines the objectives of qualified immunity. While the Court finds that this portion of Farley's motion should be denied, the denial is without prejudice.[4]

B. State Law Claims

Defendant initially claims immunity from state law claims under the Mississippi Tort Claims Act (MTCA), Mississippi Code Annotated section 11-46-7(2), which states in relevant part that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Plaintiff responds by pointing out that the same code section also specifies that "an employee shall not be considered as acting within the course and scope of his employment . . . if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." Defendant concedes in his Reply that he "may be held liable under the MTCA for state law claims constituting malice, libel, slander, defamation or any criminal offense." Def.'s Reply [13] at 14. Beyond these broad strokes, the parties

---

[4] Defendant moved for summary judgment on <u>all</u> claims. Plaintiff's response fails to address his claims under § 1985 and § 1986. Although the parties did not argue the point, the § 1985 claim would also fail because a § 1985 conspiracy claim cannot be premised on conduct for which a defendant is immune, *see Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001), and because Plaintiff has not pled racial or class-based animus, *see Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010). "A valid § 1985 claim is a prerequisite to one under § 1986." *Graham v. Johnston*, 37 F. App'x 88, No. 01-51162, 2002 WL 971585, at *1 (5th Cir. Apr. 30, 2002) (unpublished).

9

provide no further analysis as to which of Plaintiff's claims are due to be dismissed as within the course and scope of Farley's employment duties.

Plaintiff's defamation claim is plainly not subject to immunity under the MTCA. *See Smith v. N. Bolivar Sch. Dist.*, No. 2:07CV51-SA-SAA, 2008 WL 4450295, at *4 (N.D. Miss. Sept. 29, 2008) ("To the extent that the individuals were sued for defamation and slander, they do not have immunity under the Mississippi Tort Claims Act."). The intentional interference with contract claim is malice-based and also not subject to immunity. *See Zumwalt v. Jones County Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009) (holding tortious interference with business relations and contracts not within course and scope of employment under MTCA because proof of malice is required); *Perkins v. Wal-Mart Stores, Inc.*, --- So. 3d ----, 2010 WL 610627, at *5 (Miss. Ct. App. Feb. 23, 2010) (citing *Zumwalt*, 19 So. 3d at 688) (same). To whatever extent Plaintiff's civil conspiracy claim is based on these surviving tort claims, the conspiracy claim likewise survives.

Plaintiff's remaining state law claims, however, do not survive. Intentional and negligent infliction of emotional distress claims are subject to immunity. *See DePree v. Saunders*, 588 F.3d 282, 290-91 (dismissing IIED claim); *Smith*, 2008 WL 4450295, at *4 (same); *Herman v. City of Shannon, Miss.*, 296 F. Supp. 2d 709, 715 (N.D. Miss. 2003) (finding IIED not "outside the scope of employment within the meaning of § 11-46-7(2)"); *see also Moreland v. Marion County*, No. 2:07cv42-KS-MTP, 2007 WL 2461968, at *5 (S.D. Miss. Aug. 27, 2007) (citing *City of Greenville v. Jones*, 925 So. 2d 106, 111 (Miss. 2006)) (applying section 11-46-7 to find individual defendants immune from negligence-based claims). Farley is likewise immune from the contract claims. *See Zumwalt*, 19 So. 3d at 688 (dismissing claims within course and scope

of immunity other than those intentional torts that require proof of fraud, malice, libel, slander, or defamation); *DePree*, 588 F.3d at 290-91 (dismissing claim for breach of contractual duty of good faith and fair dealing).

As to the claims that survive MTCA immunity, Farley again asserts qualified immunity. However, he glosses over the distinction between qualified immunity as applied to federal claims and the immunity from state law claims created by the MTCA. All of the cases Farley cites are simply state court cases applying qualified immunity to federal claims. Significantly, each case he cites applies the immunity provided by the MTCA to the state law claims. *See Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 979 (Miss. 2004); *Elkins v. McKenzie*, 865 So. 2d 1065, 1076 (Miss. 2003).

The MTCA, "without argument, clearly operates as the exclusive remedy for the state law civil claims against a governmental entity and its employees." *Elkins*, 865 So. 2d at 1078. At least one decision from a Mississippi court has explained that qualified immunity does not apply to state law claims. *See Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1169 (Miss. Ct. App. 2007) ("Qualified immunity can be and was only granted by the trial court on Suddith's § 1983 claims. Suddith's 'breach of contract' argument is a state-law claim ineligible for a qualified immunity defense."). That said, even if common law qualified immunity from state law claims survives to some extent after adoption of the MTCA, it would not preclude Plaintiff's claims because it does not apply to an official's intentional torts and malicious actions within the course and scope of employment**.** *See Grantham v. Miss. Dep't of Corr.*, 522 So. 2d 219, 225 (Miss. 1988) (holding qualified immunity does not cover intentional torts or torts "committed outside the course and scope of his office"), *cited in Raju v. Rhodes*, 7 F.3d 1210 (5th Cir. 1993),

11

*and Gulf Coast Res. Lab. v. Amaraneni*, 722 So. 2d 530, 534 (Miss. 1998); *see also Hudson v. Rausa*, 462 So. 2d 689, 696 (Miss. 1984) (stating that public officials "have no immunity where they commit willful wrongs or malicious acts"), *overruled on other grounds by Womble By & Through Havard on Behalf of Womble v. Singing River Hosp.*, 618 So. 2d 1252 (Miss. 1993).

The motion is granted as to Plaintiff's claims for intentional and negligent infliction of emotional distress, breach of contract, and breach of implied duties of good faith and fair dealing. The motion is denied as to Plaintiff's claims for intentional interference with contract, defamation and false light, and civil conspiracy, to the extent that claim is based on the surviving intentional torts.

## IV. Conclusion

For the reasons stated above, Defendant is entitled to qualified immunity as to Plaintiff's individual-capacity federal claims, other than the § 1983 reputation claim. That portion of the motion is denied without prejudice to Defendant's right to reassert the argument after discovery of the publication issue. Defendant is also immune from state law claims for intentional and negligent infliction of emotional distress, breach of contract, and breach of implied duties of good faith and fair dealing. Defendant's motion is granted as to all these claims, which are dismissed with prejudice. The motion is denied as to state law claims of intentional interference with contract, defamation and false light, and civil conspiracy.

**SO ORDERED** this the 2nd day of July, 2010.

                                                s/ *Daniel P. Jordan III*
                                                UNITED STATES DISTRICT JUDGE