IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN C. KERMODE, Ph.D                                                                    PLAINTIFF

V.                                                     CIVIL ACTION NO.: 3:09-CV-584-DPJ-FKB

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, et al.                        DEFENDANTS

ORDER

This wrongful-termination case is before the Court on several motions. The Court will address each in turn.

I.   Plaintiff's Motion to Strike and Motion for Default Judgment, or in the alternative, Motion for Evidentiary Hearing Regarding Spoliation [73]

Kermode's Motion is predicated on three separate theories. First, Kermode argues that Defendants' Answers were not timely filed. Second, Kermode seeks sanctions for Defendants' alleged discovery violations. Third, Kermode seeks an evidentiary hearing to explore the extent of Defendants' alleged spoliation of electronic evidence. As discussed below, none of these theories are persuasive.

   A.   Defendants' Allegedly Untimely Answers

On May 21, 2010, the Court granted Kermode leave to amend his Complaint, which he accomplished May 26, 2010. In addition to some minor alterations, the Amended Complaint [32] added Defendants Helen Turner, Daniel W. Jones, and James E. Dorn. All defendants—new and original—filed Answers [55–59] on November 4, 2010, and Kermode now moves the Court, under Rule 55(b)(2) of the Federal Rules of Civil Procedure, to strike the Answers and enter default judgment. This request is frivolous and not well taken.

As an initial point, the service and response rules under the Federal Rules of Civil Procedure are different for original and newly added defendants. Defendants who have

previously answered and are represented by counsel are generally served under Rule 5.  *See* Fed. R. Civ. P. 5(b)(2)(E) (permitting service by electronic means); *accord* L.U. Civ. R. 5(c) (adopting administrative procedures for electronic case filing).  Upon service, Rule 15(a)(3) gives original defendants 14 days to answer amended complaints.  But new defendants are entitled to service of the summons and complaint according to Rule 4.  *See Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971) ("[W]hen an amended complaint, normally served in conformity with Rule 5, asserts an additional claim against a party who has not appeared in the original suit, the pleading must be served in accordance with Rule 4 in order that the court obtain personal jurisdiction over the new party."); *accord* 48 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1146 (3d ed. 1998) ("[A]mended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with Rule 4."). In this case, Kermode apparently lumped the two groups together, assuming that service of all Defendants was required under Rule 4.

In this vein, Plaintiff's counsel e-mailed defense counsel on October 14, 2010, stating: "As we have *previously discussed*, attached are the waivers for each of the Defendants in this case.  I think then that all you need to do is sign them, scan them, and then file them electronically with the Court."  Defs.' Resp. [74] Ex. A (emphasis added).  Plaintiff's counsel provided waivers for all Defendants—original and newly added—stating that an answer was due "60 days from 10/13/2010, the date this request was sent."  *See* Defs.' Waivers of Service [48–52].  All Defendants signed and docketed the Waivers on October 14, and all filed their Answers on November 4—well within the referenced 60 days.

The newly added Defendants waived service and were not in default because they filed their Answers well within the deadline imposed by Rule 4(d)(3). The original Defendants, however, may be in a different boat since, under Rule 5, they were arguably served on May 26. If so, their answers were due June 9, 2010—14 days after the date Kermode filed his Amended Complaint. *See* Fed. R. Civ. P. 15(a)(3). But given the circumstances, the Court will not strike the Answers and grant default judgment as Kermode hopes.

"Federal courts generally disfavor default judgments, preferring to resolve disputes according to their merits." *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001) (citations omitted). In the context of a duly entered default judgment, the Court would have discretion to set aside the default upon consideration of whether the default was "willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985) (citations omitted). In the present case, Kermode discussed service under Rule 4 with the defense, provided waivers indicating that answers were due 60 days from October 13 (i.e., December 16), and then sought default when Defendants answered on November 4, more than a month before the deadline Kermode provided. Clearly both sides contemplated service under Rule 4. There has been no willfulness or prejudice, and because defenses exist, Kermode's Motion is denied.

B.     Sanctions for Alleged Discovery Violations

Kermode alternatively seeks default judgment as a sanction for alleged disclosure and discovery violations. In particular, Kermode contends that Defendants failed to preserve certain e-mails between Kermode and his former student, Sung Won Park; failed to produce other e-

3

mails between the professor and his student in their native format as part of Defendants' pre-discovery disclosures; and subsequently failed to produce the emails in response to Kermode's written discovery requests.

Kermode's request faces several procedural hurdles.  First, Kermode raises this issue for the first time in a Motion for Sanctions filed after the conclusion of discovery and one day after the motions deadline expired.  Regarding pre-discovery disclosures, Local Rule 26(a)(3) states in relevant part:

> If a party fails to make a disclosure required by this section, any other party must move to compel disclosure and for appropriate sanctions under FED.R.CIV.P. 37(a).  The failure to take immediate action and seek court intervention when a known fact disclosure violation other than as to expert witnesses occurs will be considered by the court in determining the appropriate sanctions to be imposed regarding a subsequent motion filed under FED.R.CIV.P.37(c).

Kermode made no such motion.

As for the alleged discovery violaions, Kermode seeks Rule 37(b) sanctions, but again he raised these issues for the first time in a Motion for Default Judgment filed after the close of discovery and after the motions deadline expired.  Under Local Rule 7(b)(2)(B), a party must file motions compelling discovery "sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline."  The failure to bring these issues to the Court in a timely manner supports denial of the requested sanctions.

Kermode also cites Rules 37(d), which addresses a party's failure to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection.  But sanctions under Rule 37(d) "must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response

without court action." Fed. R. Civ. P. 37(d)(1)(B).  No such certificate was filed.  Thus, even assuming a violation, which is not apparent, the Motion is defective.

Kermode's Motion pursuant to Rule 37(b)(2)(B), presumably for alleged failure to produce deponents, is likewise deficient.  Pl.'s Mot. [73] at 1.  Rule 37(b)(2)(B) provides sanctions for failure to "comply with an order under Rule 35(a)," which in turn relates to physical and mental examinations.  There have been no such orders, and neither rule is applicable.

These procedural defects aside, Rule 37(e) presents a more serious impediment to Kermode's Motion for Sanctions.  The Rule states: "Failure to Provide Electronically Stored Information.  Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."  As discussed below, the subject e-mails were apparently deleted as part of the e-mail system before reason existed to preserve them in another format.  Thus, Rule 37(e) sanctions are not available.

   C.   Evidentiary Hearing on the Issue of Spoliation

As an alternative to sanctions, Kermode moved for an evidentiary hearing, and ultimately an adverse inference against Defendants, alleging that Defendants committed evidentiary spoliation by destroying certain e-mails relevant to the termination of Kermode's employment.  He further questions the authenticity of paper copies of other e-mails produced in discovery on the basis that the original e-mails were not preserved in the proper format.  Neither of Kermode's arguments is sufficient to warrant an evidentiary hearing, let alone an adverse inference.

1.     The Allegedly Missing E-mails

Kermode does not identify—even generally—the number or nature of the allegedly missing e-mails. And there is no dispute that Defendants have produced copies of all e-mails relied upon by UMMC personnel in making and upholding the decision to terminate Kermode's employment. But Kermode asks this Court to assume that the University spoliated other relevant e-mails between Kermode and Park and to infer that these e-mails would have been detrimental to Defendants' case. Such an inference should be drawn, Kermode claims, from the following facts: (1) despite Kermode's June 9, 2009 request, Defendants have never certified that they "preserved and protected" the e-mails in question from spoliation, (2) Defendants did not disclose any further e-mails in their required disclosures or in response to Kermode's requests for production, (3) University officials never engaged the school's IT department to preserve the e-mails, and (4) the University switched e-mail systems after Kermode initiated this suit. Pl.'s Mot. [73] at 3–4, 7–9.

Spoliation is "[t]he intentional destruction, mutilation, alteration, or concealment of evidence." *Black's Law Dictionary* 1531 (9th ed. 2009). But "[a] party can only be sanctioned for destroying evidence that it had a duty to preserve, and such duty arises when 'the party has notice that the evidence is relevant to litigation or when a party should have know that the evidence may be relevant to future litigation.'" *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).[1] When spoliation is the result of a litigant's bad-faith actions, it gives rise to

---

[1] Federal courts in Mississippi have recognized the *Zubulake* decisions as "setting the benchmark standards for modern discovery and evidence-preservation issues." *Maggette v. BL Dev. Corp.*, No. 2:07-CV-181-M-A, 2009 WL 4346062, at *1 (N.D. Miss. Nov. 24, 2009); *see also PIC Group, Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662-KS-MTP, 2011 WL

an adverse inference that the evidence was detrimental to the spoliating party's case. *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). "The party requesting an adverse inference must first show that the documents in question exist or existed and were within the control of the opposing party." *Jobe v. ATR Mktg., Inc.*, 189 F.3d 466, at *6 n.3 (5th Cir. 1999) (unpublished table decision) (citation omitted). "Moreover, a party seeking to obtain an adverse inference based on non-production or destruction of documents must show bad faith." *Id.* (citing *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) ("[T]he circumstances of the act must manifest bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.")). Kermode has failed to establish either prong of the adverse-inference test used in the Fifth Circuit.

      a.  No Showing that Evidence Actually Existed

 Kermode has not shown that there were, in fact, relevant e-mails between Park and himself other than those produced by Defendants. As either a sender or a recipient of these alleged e-mails, Kermode can reasonably be expected to identify what content, if any, is missing from the e-mails produced or to show, at least circumstantially, that other e-mails actually existed but were not produced. Simply submitting an affidavit or sworn declaration to this end would have sufficed, but Kermode submitted neither. *Cf. Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 313 (S.D.N.Y. 2003) ("Zubulake knew that there were additional responsive e-mails that UBS had failed to produce because she herself had produced approximately 450 pages of e-mail correspondence.").

---

711581, at *1–2 (S.D. Miss. Feb 18, 2011) (relying in part on *Maggette* and citing *Zubulake*). In the absence of binding Fifth Circuit precedent, this Court also considers *Zubulake* and its progeny persuasive as to the standards for preserving electronic evidence.

Moreover, Kermode had more than nine months to develop an evidentiary record on this issue and to seek the Court's assistance if necessary. Defendants served their initial disclosures on December 14, 2009. Though the Court stayed discovery pending a determination on the issue of qualified immunity on December 22, it lifted the stay less than three months later. *See* Text Order, Mar. 9, 2010 (lifting stay). The discovery deadline in this case was then set for December 17, 2010. Case Mgt. Order [15] Mar. 11, 2010. While Kermode complains of challenges in conducting discovery, never did he move the Court to compel discovery or otherwise sanction Defendants for failing to participate in discovery. The Court will not grant an evidentiary hearing to allow Kermode to develop a spoliation theory he had ample opportunity to develop during discovery.

Kermode's unsupported allegation that "UMMC . . . has destroyed, lost or otherwise corrupted vital emails, which are necessary for the Plaintiff to meet his burden of proof and to otherwise counter the woeful lack of due process by the Defendants in the termination of his tenured contract with UMMC," made two weeks after the discovery deadline, is insufficient to warrant an evidentiary hearing on the matter of spoliation. Pl.'s Mot. [73] at 4.

        b.        No Showing of Bad Faith

Even if Kermode had met the "actually existed" prong of the spoliation test, he has not sufficiently shown bad faith on the part of Defendants and is thus not entitled to an adverse inference or further investigation of the matter. *Vick*, 514 F.2d at 737. Rather, Kermode acknowledges facts establishing that Defendants' duty to preserve electronically stored information did not arise until after much of the information had been automatically deleted from the University's e-mail server.

Defendants admit that Park e-mailed Department Chair Dr. Jerry Farley and Graduate Program Director Dr. Bob Kramer with complaints about Kermode as early as June 26, 2008. Defs.' Mem. Supp. Summ. J. [68] at 2.  They similarly admit that Kramer first advised Kermode to back off on July 1.  *Id.* at 2.  And Farley testified that he instructed Park to personally archive her e-mails sometime in July.  Pl.'s Mot. [73] Ex. 4, Farley Dep. 3–4.  But despite several meetings in July 2008 where Kramer and/or Farley admonished Kermode not to pursue Park any further, *see* Defs.' Mem. [68] at 35, there is no evidence to suggest that either professor should have reasonably anticipated litigation at that time.  *See Zubulake*, 220 F.R.D. at 217 ("Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve.").  Indeed, Farley did not even threaten further action until August 16, when he warned Kermode that any further contact with Park could be considered harassment and would be reported to Assistant Vice Chancellor Dr. Helen Turner.  Eventually Farley did report the matter to Turner, but not until September 2008, at which time Dr. Turner made the decision to terminate Kermode.  Defs.' Mem. [68] at 5.

In his May 25, 2010 deposition, Dr. Farley revealed that the e-mail system used in 2008 automatically deleted e-mails that were not saved after 60 days.  Pl.'s Mot. [73] Ex. 4, Farley Dep. 23:16–18.  Thus, even if Dr. Turner should have anticipated litigation in September of 2008, it does not appear the e-mails in question—if they ever existed—would have survived the automatic purging.  Assuming Turner informed University counsel of the potential for litigation arising from her termination decision, and assuming University counsel instituted a litigation hold on all e-mail correspondence between Park and Kermode, only e-mails from July 27, 2008 and later would have been preserved.  Since the events of which Park complained transpired

9

prior to this date, the allegedly relevant correspondence would have already been deleted. *See, e.g.*, *id.* Ex. 2, Park Dep. 60:7–15 (describing Kermode's July 1 or 2 e-mail as "very shocking and terrifying").[2]

In sum, Kermode alleges that "UMMC wilfully and blatantly has allowed vital and probative evidence to be destroyed." Pl.'s Mot. [73] at 9. Yet he fails to show what that evidence might be or that its destruction resulted from Defendants' bad faith. Moreover, he seeks evidence that he had an equal opportunity to preserve. Kermode has not met his spoliation burden and is thus not entitled to an adverse inference against Defendants.

2.   The Form and Content of E-mails Produced

The Federal Rules of Civil Procedure require litigants to disclose copies "of all documents, electronically stored information, and tangible things" in the disclosing party's possession that may be used to support that party's claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Such disclosures are to be made "without awaiting a discovery request." *Id.* After the parties have conferred in accordance with Rule 26(f), and upon request by the opposing party, a litigant must also disclose reasonably accessible, nonprivileged, electronically stored information in its possession "that is relevant to any party's claim or defense." *Id.* 26(b)(1)–(2), 26(d). When the parties do not "specify a form for producing electronically stored information," Rule 34 requires a party responding to a request for production of such information to "produce

---

[2] At one point, Kermode suggests that the University's failure to preserve e-mails in the face of a notice of intent to sue, as required under the Mississippi Tort Claims Act ("MTCA"), was particularly egregious, given that Defendants "kn[ew] full-well, that all such data and emails were of paramount significance." Pl.'s Mot. [73] at 7. But as noted, this date falls well beyond the time in which recovery of e-mails would have been possible. Kermode sent his MTCA notice and request for preservation of evidence on June 19, 2009, more than nine months after the University terminated his employment. Pl.'s Mot. [73] Ex. 1, MTCA Notice Letter. The e-mails in question would have been long deleted at that time.

it in a form or forms in which it is ordinarily maintained or *in a reasonably usable form or forms.*"  *Id.* 34(b)(2)(E)(ii) (emphasis added).

Kermode argues the e-mails between Park and himself that are now retained in paper format are unreliable because they are "clearly *not* the original emails."  Pl.'s Mot. [73] at 6. These e-mails, Kermode claims, "are clearly subject to egregious and malicious manipulation by a vindictive graduate student."  *Id.*  He further argues that "no one has taken the responsible and prudent action of verifying and authenticating the emails or their source and whether the emails are even complete."  *Id.*

Obviously, e-mails are not "ordinarily maintained" in paper format.  *See* Fed. R. Evid. 34(b)(2)(E)(ii).  But Kermode has not demonstrated, indeed has not even alleged, that the form of the e-mails chosen by Defendants is not "reasonably usable."  *See id.*  Moreover, even if such a claim could be made, Kermode has not complied with either the procedural requirements for discovery motions.  *See* Fed. R. Civ. P. 37 (requiring that a motion to compel disclosure include a good faith certificate); *accord id.* 34(b) advisory committee notes (explaining that where the parties cannot agree to the form of electronically stored information produced, they must first "confer under Rule 37(a)(2) in an effort to resolve the matter before the requesting party can file a motion to compel"); L.U. Civ. R. 37(a) (requiring movant to attach a good faith certificate, or alternatively, an affidavit or declaration "detailing the lack of cooperation" by a party, to all discovery motions); *id.* 37(c) ("Failure to comply with subsections (a) or (b) of this rule *will* result in a denial of the motion without prejudice . . . ."); *see also id.* 7(b)(2)(B) ("A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the

11

motion, ruling by the court and time to effectuate the court's order before the discovery deadline.").

Kermode had ample opportunity to dispute the authenticity of the e-mails at his hearing before the Academic Freedom and Faculty Responsibility Committee. *See, e.g.*, Defs.' Resp. [74] Ex. 2, Hr'g Tr. 67, 70–71, 74–75, 77, 79, 92–93. And he had a nine-month window in which to conduct and challenge discovery. This was not an issue that arose at the eleventh hour; Kermode's original and amended Complaints vaguely dispute the authenticity of "documentary evidence" and generally allege that Defendants "spoliated, falsified, manufactured and corrupted evidence." Pl.'s Amd. Compl. [32] at 16–17; Pl.'s Compl [1] at 13. Kemode never substantiated those claims nor filed a timely evidentiary motion. And instead of submitting an affidavit or declaration disputing the contents of the messages on which the University admittedly relied in making its termination decision, Kermode continues to acknowledge their contents, all the while contending that the words were simply taken out of context.

Thus, to the extent Kermode seeks an adverse inference or an opportunity to further develop his spoliation theory for Defendants' failure to preserve the e-mails in their native format, his Motion must be denied. And while generally Kermode would be permitted to re-file a discovery motion after complying with Rule 37 of the Federal and Local Rules, doing so here would be fruitless. The discovery deadline was December 17, 2010—two full weeks before Kermode filed his original Motion. Kermode's opportunity to challenge the form or the contents of the e-mails produced by Defendants has passed.

II.     Defendants' Motion for Summary Judgment [68] and Plaintiff's Rule 56(d) Motion [75]

On December 30, 2010—the motion deadline in this case—Defendants moved for summary judgment on several grounds. Kermode never responded. But nearly three months later, Kermode filed a Motion [75] under Rule 56(d) of the Federal Rules of Civil Procedure,[3] asking the Court to stay its determination of the summary judgment Motion pending the outcome of Kermode's previously filed Motion [73]. Defendants promptly responded. Kermode never replied, and the time to do so has passed.

Rule 56(d)(1) permits the Court to defer considering a summary judgment motion or deny it when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. Alternatively, the Court may "allow time to obtain affidavits or declarations or to take [additional] discovery." *Id.* 56(d)(2). To establish a right to relief, Kermode must show "by affidavit or declaration" that there are "specific reasons" he cannot present essential facts to oppose Defendants' Motion. In other words, he "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citations and quotations omitted).

As an initial matter, the Rule 56(d) Motion was filed about three months after Defendants' Summary Judgment Motion and was untimely. *See Luera v. Kleberg County, Tex*.,

---

[3]Defendants contend that Rule 56(d) is inapplicable, but Kermode cites the proper rule. Rule 56 was amended effective December 1, 2010, and "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note.

Civ. Action No. C-10-369, 2011 WL 2551038, at 5 (S.D. Tex. June 27, 2011) ("A Rule 56(f) motion cannot be filed after the deadline set for filing of the opponent's response brief and affidavits.") (citations and quotations omitted). Regardless, Kermode's Motion seeks a continuance so that Kermode may further develop his spoliation theory through an evidentiary hearing. The Court denied Kermode's request for an evidentiary hearing and finds no basis for granting Rule 56(d) relief.[4]

III.     Defendants' Motion to Strike [78]

Defendants also moved to strike Kermode's Rule 56(d) Motion for the same reasons they opposed the Motion. *See generally* Defs.' Mot. [78]. Because Kermode's Rule 56(d) Motion is denied, Defendants' Motion to Strike is moot.

IV.     Plaintiff's Motion for Time [80]

Finally, on May 10, 2011, Kermode filed his Motion for Enlargement of Time to Present Supplemental Facts and Briefing in Support of his Motion to Strike Defendants' Answers and for Default Judgment, or, alternatively, Motion for an Evidentiary Hearing Regarding Defendants' Spoliation of Evidence; and in Response to the Defendant's Motion for Summary Judgment [80]. The Motion seeks relief under Rule 6(b) of the Federal Rules of Civil Procedure.

Rule 6(b) allows a court to extend a party's deadline after its expiration on the basis of excusable neglect. Fed. R. Civ. P. 6(b)(1). To establish "excusable neglect," courts consider

---

[4]To the extent Kermode may have wished to assert a broader request under Rule 56(d), he failed to attach an affidavit or a declaration as required by the Rule. Courts routinely deny such unaccompanied motions. *See, e.g.*, *Shoemaker v. Robinson*, No. 3:09-CV-645-DPJ-FKB, 2011 WL 679206, at * 3 (S.D. Miss. Feb. 16, 2011) (denying plaintiff's Rule 56(d) motion, in part, because it was not accompanied by a supporting affidavit or declaration); *Kyle v. Epps*, No. 3:09CV125 DPJ-FKB, 2010 WL 3747820, at *2 (S.D. Miss. Sept. 20, 2010) (same). Finally, the discovery was not diligently pursued. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1993)

14

"the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 n.8 (5th Cir. 2006).

Kermode premises the requested relief on a newly signed affidavit which, according to him, demonstrates Park's attempt to "'corruptly persuade' [sic] a witness, Nancy Stubbs, from providing any testimony in this case." Pl.'s Mot. [80] at 4.  Stubbs is one of Kermode's former students.  In her April 30, 2011 affidavit, Stubbs states:

> In the Spring of 2010, I encountered Sang Won in the hallway at UMMC, and I simply asked her what had happened to Dr. Kermode.  She stated that "he's gone; he's long gone."  She stated that she had heard that I testified at Dr. Kermode's hearing before the faculty grievance committee, and I confirmed that I had, as stated above.  Sang Won then told me that Dr. Kermode had sent her a bunch of emails and had repeatedly called her house.  She also stated that he repeatedly came into Dr. Ma's laboratory, where she did research, and harrassed her there.  She then pointedly stated that "you got involved in something that you do not know anything about."  Although I explained to her that Dr. Kermode had always been professional to me and that I had only been asked to testify about my view of Dr. Kermode's character, this explanation did not please her.  In retrospect, I believe that Sang Won was seeking to prevent me from providing any testimony regarding Dr. Kermode.

Pl.'s Mot. [80] Ex. 3, Stubbs Aff. ¶ 7.  Aside from the fact that Stubbs approached Park, her assessment of Park's intent constitutes rank speculation—as does much of her affidavit. Regardless, the affidavit regarding alleged witness intimidation offers no grounds for granting a Rule 6(b)(1) extension to supplement or develop evidence regarding the alleged destruction of e-mails.  The lack of nexus raises concern that the Motion is not in good faith.[5]

---

[5]To the extent the Motion could be read as a request to supplement the record with this new affidavit, it is granted.  But the affidavit would not alter the Court's ruling on spoliation because it is speculative and otherwise insufficient.

Aside from the lack of an apparent nexus between requested relief and the new evidence upon which it is based, Kermode has not demonstrated excusable neglect pursuant to Rule 6(b)(1).  First, Kermode has failed to establish a basis for non-compliance that was beyond his control.  The Court previously acknowledged the personal and medical challenges Kermode's attorney faced during this case, *see* Order [64] Dec. 16, 2010, and accepts the reasons proffered for the interruption of Park's and Farley's depositions.  *See* Pl.'s Mot. [80] at 3 (explaining that Park was in an automobile accident); *id.* at 6 (explaining that Farley suffers from Parkinson's disease).  But these facts alone are insufficient to justify the request to extend this specific deadline.  *See Adams*, 465 F.3d at 162 n.7 (affirming denial of Rule 6(b) motion where attorney offered personal, medical, and financial reasons for failing to comply with court-ordered deadlines).  The Court is certainly sympathetic to counsel's medical condition and the loss of his father, but there was ample time before and after the death of his father in July 2010 in which counsel was capable of conducting the disputed discovery.  To the extent he was not, Kermode could have sought another continuance of the discovery and motions deadlines.

Looking back, Kermode began deposing Park on June 25, 2010, but adjourned before completing the deposition.  Despite several delays, the parties agreed to reconvene the deposition on December 22, 2010—five days after the discovery deadline had passed and without leave of Court.  Unfortunately, Park was involved in an automobile accident on December 21 for which she was hospitalized.  Her deposition was cancelled as a result of the accident.  Kermode could have immediately filed a motion seeking another extension of the discovery deadline to conclude the deposition out-of-time.  Instead, the December 30 motion deadline expired and the next day Kermode filed a meritless Motion to Strike Defendants' Answers and for Default Judgment [73].

Meanwhile, Defendants filed a timely Motion for Summary Judgment on December 30, 2010, but Kermode failed to file a timely response or seek an extension of time within which to do so. Nearly three months after Defendants' dispositive Motion, Kermode filed a delinquent Rule 56(d) Motion.

Although certain delays in the matter were unavoidable, and Kermode could not unilaterally conduct discovery, other delays were not and the case is well off track. We are three months past the original trial date, yet Plaintiff has not responded to Defendants' Motion for Summary Judgment, which has been pending for over six months. And Kermode's current Motion [80] was filed five months after the extended discovery deadline expired. Aside from mere delay, reopening discovery now would necessitate new rounds of briefing on all of the pending motions except the Rule 6(b)(1) Motion—whether the newly discovered evidence helps or hurts Kermode. Allowing Kermode to reopen discovery at this late date will adversely impact the judicial proceedings. *Adams*, 465 F.3d at 162 n.8. Consequently, Kermode's Rule 6 Motion is denied.[6]

IV.   CONCLUSION

The Court recognizes that counsel has faced obstacles and that this Order may seem harsh. It is not the Court's intent to pick at capable attorneys, but the Court must state the basis

---

[6]Kermode does raise one issue of concern, although it is speculative. He contends that Park may leave the country when she concludes her education. Because Park is a key witness and her deposition was recessed, the parties will be allowed to take her trial deposition *if* she plans to leave the country prior to trial. The Court recognizes that defense counsel does not represent Park, but defense counsel is instructed to contact the witness and determine if and when she intends to leave the country. Counsel shall docket a status report no later than July 15, 2011, summarizing the results of this effort. If Park intends to leave the country, then the parties are instructed to set a telephonic conference with the undersigned to determine a trial date and whether a trial deposition must occur.

17

for its rulings.  Ultimately, this result is dictated by the fact that Kermode waited too long to seek the Court's assistance in completing discovery.  At some point the Court must control its docket and move cases toward resolution.  The present case has reached that stage.

For the reasons explained herein, Kermode's Motion to Strike and Motion for Default Judgment, or in the alternative, Motion for Evidentiary Hearing Regarding Spoliation [73] is DENIED, Kermode's Rule 56(d) Motion [75] is DENIED, Defendants' Motion to Strike [78] is MOOT, and Kermode's Rule 6(b) Motion [80] is DENIED in part and GRANTED in part.  No later than July 15, 2011, Kermode must respond to Defendants' Motion for Summary Judgment.

**SO ORDERED AND ADJUDGED** this the 1st day of July, 2011.

                                         s/ *Daniel P. Jordan III*
                                         UNITED STATES DISTRICT JUDGE