UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN C. KERMODE, PH.D.                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO.: 3:09cv584-DPJ-FKB

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, ET AL.              DEFENDANTS

ORDER

This employment dispute is before the Court on Defendants' Motion for Summary

Judgment [67]; Plaintiff's Cross-Motion for Summary Judgment [86]; and Defendants' Motion

to Strike [89].  The Court, having fully considered the premises, finds that Defendants' Motion

for Summary Judgment is granted in part and denied in part; their Motion to Strike is granted;

and Plaintiff's Motion for Summary Judgment is denied.

I.       Facts and Procedural History

Plaintiff John Kermode was a tenured professor at the University of Mississippi Medical

Center (UMMC) in Jackson, Mississippi.  He brings a wide variety of state and federal claims

related to the termination of his employment in 2008.

Kermode's dismissal flowed from his dispute with a graduate student, Sang Won Park,

who was Kermode's laboratory mentee.  The following facts are not disputed in this record:

Kermode invited Park to attend an academic conference with him—the Gordon Research

Conference—that would include the leading players in Park's chosen field, but Kermode failed

to inform his wife; when the spouse discovered the plans, she became "very angry" and asked to

meet Park in a parking lot after a dinner party; Kermode thereafter withdrew Park's invitation to

attend the Gordon Research Conference, prompting Park's decision to leave Kermode's lab and

sever the professional relationship.

Although the parties dispute some details, there is likewise no dispute that Kermode made numerous attempts to change Park's mind, that she refused, that she asked not to be contacted again, and that Kermode made at least one additional attempt after what he perceived to be Park's final decision.  During this period, Kermode met with Defendant Jerry Farley, who was the acting head of Kermode's department, regarding Park .  Kermode's testimony and affidavit demonstrate that Kermode strongly disagreed with Park's decision to leave and sever the professional relationship.  He also believes Farley should have done more to resolve the dispute and return Park to Kermode's lab.

In August 2008, Farley brought the issue to the attention of Interim Director of Human Resources James Dorn and Assistant Vice Chancellor Helen Turner.  The decision was made to immediately terminate Kermode's employment, and he received a letter so stating.  But the next day, Kermode was informed that his employment was suspended with pay pending a hearing.  A hearing was conducted before the Academic Freedom and Faculty Responsibility Committee (the "Committee"), where harassment was unanimously found but termination was viewed as overly harsh.  On December 12, 2008, Vice Chancellor Dan Jones rejected the Committee's recommendation and followed the recommendation from Turner and others to terminate Kermode's employment.  Kermode appealed to the Institution of Higher Learning (IHL) which declined the appeal.

On September 25, 2009, Kermode sued IHL, UMMC and Farley in his individual and official capacities.  In his Amended Complaint, Kermode added official capacity claims against Dorn, Jones and Turner.  Kermode's suit includes federal causes of action under 42 U.S.C. §§ 1983, 1985, 1986, and state-law claims for breach of contract, breach of the duty of good faith

and fair dealing, intentional infliction of emotional distress (IIED), invasion of privacy, tortious interference with a contract, defamation, and civil conspiracy.

In July 2010, the Court dismissed certain claims against Farley based on qualified immunity and immunity under the Mississippi Tort Claims Act (MTCA), Mississippi Code Annotated section 11-46-7(2). Three months later, in October 2010, the Court dismissed all claims against IHL as waived and otherwise blocked by IHL's Eleventh Amendment immunity. All remaining Defendants now seek summary judgment, and Kermode filed a delinquent cross-motion for summary judgment which Defendants moved to strike. The Court has personal and subject-matter jurisdiction and is prepared to rule.

## II.   Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[1] The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[2] The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"[3] In

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Id*. at 323.

[3] *Id*. at 324 (citation omitted).

3

reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."[4]  When such contradictory facts exist, the court "may not make credibility determinations or weigh the evidence."[5]

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.[6] Moreover, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[7]  Finally, Kermode observes that many of the disputed emails in the record have not been authenticated.  Generally speaking, "unauthenticated documents are not competent summary judgment evidence."[8] Despite Kermode's argument, Defendants made no attempt to remedy the issue in reply. Nevertheless, Kermode's own evidence, and the authenticated records in Defendants' submissions, are sufficient to support these rulings.

---

[4]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[5]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[6] *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

[7]*Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("We have explained that Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (citations and quotations omitted).

[8]*Montes v. Ransom*, 219 F. App'x 378, 380 (5th Cir. 2007); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) (holding that documents submitted as summary- judgment evidence must be authenticated).

4

III.    Analysis

    A.    Housekeeping Matters

Although Kermode urges the Court to reject Defendants' motion in its entirety, he does not address a number of defenses and therefore waives those issues.[9]  Other defenses receive passing and clearly erroneous objection.  Full-blown analysis of these matters is unnecessary.

    1.    IHL

Much of Kermode's Response [84] relates to state-law claims against IHL, but IHL has already been dismissed.[10]

    2.    UMMC

UMMC is likewise entitled to dismissal.  The "Eleventh Amendment bars private citizens from bringing suit against a state in federal court, unless the suit falls within the narrow exception articulated by the Supreme Court in *Ex Parte Young*."[11]  UMMC is an arm of the state that has not waived its Eleventh Amendment immunity.[12]  And contrary to Kermode's argument, the *Ex Parte Young* exception applies to claims against individuals in their official capacities, not claims against the state or an arm of the state.[13]  *Ex Parte Young* is likewise inapplicable to

---

[9]*Keenan v. Tejeda,* 290 F.3d 252, 262 (5th Cir. 2002) (finding waiver).

[10]Oct. 12, 2010 Order [45].

[11]*McKinley v. Abbott*, 643 F.3d 403, 405 (5th Cir. 2011) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123 (1908))).

[12]*McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (affirming that UMMC is "an arm of the University of Mississippi, is an agency of the state and entitled to Eleventh Amendment immunity absent waiver or abrogation") (citations omitted).

[13]*Ex parte Young*, 209 U.S. 123 (1908); *see Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988).

5

Kermode's state-law claims,[14] and UMMC is not a "person" for purposes of Kermode's federal claims under 42 U.S.C. § 1983.[15]  All claims against UMMC are therefore dismissed.

### 3.      Defendants Dorn, Jones, and Turner

Kermode sued Defendants Dorn, Jones, and Turner in their official capacities only.[16] Defendants contend that they are entitled to dismissal of all claims because they are not "persons" under § 1983[17] and because they enjoy Eleventh Amendment immunity in their official capacities.[18]  The arguments are only partially correct.

Individual defendants sued for monetary damages in their official capacities are not "persons" under § 1983.[19]  But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."[20]  Similarly, officials receive Eleventh Amendment immunity from suit in federal court as to all unwaived federal claims

---

[14]*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (holding that *Ex parte Young* fiction applies only to violations of federal law by state officials); *see also McKinley*, 643 F.3d at 406 (affirming Eleventh Amendment immunity for state-law claims).

[15]*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.")

[16]Am. Compl.[32] ¶¶ 5–7.

[17]Defs.' Mem [68] at 24.

[18]Defs.' Reply [81] at 2.

[19]*Will*, 491 U.S. at 71 (barring suits for money damages under § 1983 against states and state officials in their official capacity).

[20]*Id.* at 71 n.10 (citation and internal quotation marks omitted).

except those for prospective-injunctive relief.[21]  Finally, state-law claims against officials in their official capacities are barred by the Eleventh Amendment.[22]

Thus, Defendants Dorn, Jones, and Turner are entitled to dismissal of all state-law claims asserted against them in Counts III, IV, V and VIII and all federal claims found in Counts I and II other than those for prospective-injunctive relief.

4.      Counts I and II

Counts I and II of the Amended Complaint offer overlapping constitutional claims with the addition of an Equal Protection claim in Count II.  But because such claims must be pursued under § 1983, the Court focuses on Count II in which Kermode expressly invokes § 1983.[23] Defendants contend that all § 1985 and § 1986 claims for monetary damages against UMMC and its employees in their official capacities must be dismissed because such parties are not "persons" under those acts and they are entitled to immunity under the Eleventh Amendment. Kermode's responsive memorandum acknowledges but fails to respond to these arguments. Plaintiff's claims for monetary relief under §§ 1985 and 1986 are waived.[24]  Finally, the Equal Protection claim must be dismissed because it is not reflected in Kermode's Response or

---

[21]*Pennhurst State Sch. & Hosp.*, 465 U.S. at 103.

[22]*Id.* at 106.

[23]*See Neyland v. Henley-Young Juvenile Justice Ctr.*, No. 3:09cv520–DPJ–FKB, 2011 WL 1980276, at *3 (S.D. Miss. May 20, 2011) (recognizing that claims for constitutional violations must be brought under § 1983).

[24]Defendants' arguments are otherwise meritorious.  *See Baxter v. Louisiana*, 2003 WL 22175990, Civ. A. 03-2014, at *1 n.6 (E.D. La. Sept. 19, 2003).

Memorandum,[25] and "the class-of-one theory of equal protection has no application in the public employment context."[26]

               5.       IIED

In Count IV of his Amended Complaint, Kermode asserts a cause of action for IIED as to all Defendants.  His responsive memorandum makes no argument for a stand-alone-IIED claim.[27] Instead, Kermode argues that he may "assert a claim for mental anguish and emotional distress under a breach of contract claim."[28]  First, the IIED claim is waived to the extent it is asserted as a separate cause of action rather than an element of the contract claim.[29]  Second, the Eleventh Amendment precludes Kermode's breach-of-contract claim against UMMC and the individual Defendants in their official capacities.  Third, the individual-capacity claim against Farley has been dismissed.  Finally, the relief sought is monetary and retrospective, thus eliminating the *Ex Parte Young* foothold.

In summary, the only claims left for consideration are the federal claims for prospective-injunctive relief found in Count II (other than the Equal Protection claim), and the surviving individual-capacity claims against Defendant Farley.

---

[25]*See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").

[26]*Engquist v. Or. Dept. of Agr.* 553 U.S. 591, 607 (2008).

[27]Pl.'s Mem. [85] at 28–29.

[28]*Id.* at 28.

[29]*See, e.g., Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (addressing waiver).

B.      Count II

In Count II of his Complaint, Kermode alleges that Defendants violated his First, Fourth and Fourteenth Amendment rights.  In particular, he claims that Defendants violated his constitutionally protected interests without procedural due process and in violation of his right to substantive due process.  As stated, Kermode is now restricted to prospective-injunctive relief if he otherwise prevails.

1.      Procedural Due Process

Kermode contends that Defendants violated his right to procedural due process under the Fourteenth Amendment to the Constitution.

> The Fourteenth Amendment prohibits any state deprivation of life, liberty, or property without due process of law.  Application of this prohibition requires the familiar two-stage analysis:  We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law."[30]

Kermode's protected interests are not disputed.  Instead, the parties contest whether Kermode received the process he was due.

That decision requires a flexible approach because it is "now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.  Due process is flexible and calls for such procedural protections as the particular situation demands."[31]  In general, the Court balances three factors: "(1) the

---

[30]*Ingraham v. Wright*, 430 U.S. 651, 672 (1977)*; see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

[31]*Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (citation and internal quotation marks omitted).

private interest affected; (2) the risk of erroneous deprivation from current and proposed procedures; and (3) the government's interest."[32]

First, there is no reasonable dispute that Kermode's interest in avoiding termination is high.[33]  The Government's competing interest in removing professors for cause is likewise high.  So the question is whether the process produced a risk of erroneous deprivation.

This inquiry requires review of the pre- and post-termination process.[34]  Following *Loudermill* the Fifth Circuit has applied the following test in the context of tenured employment:

> The Due Process Clause requires that a state, before depriving a citizen of property, provide "some kind of a hearing."  This "hearing" need not be a formal, adversary hearing.  Due process requires only that the employee receive "notice and an opportunity to respond."  As the Supreme Court put it [in *Loudermill*], "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[35]

As noted in *Schaper v. City of Huntsville*, an elaborate pre-termination proceeding may not be required if it creates an "excessive burden . . . on the government's interest in quickly removing an unsatisfactory employee.  But in the event of minimal pretermination safeguards, the substantial private interest one has in not being deprived of his livelihood *requires a full hearing after termination*."[36]

---

[32] *James v. City of Houston Tex.*, 48 F. App'x 916 (5th Cir. 2002) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[33]*Loudermill*, 470 U.S. at 543 ("We have frequently recognized the severity of depriving a person of the means of livelihood.").

[34]*Gilbert*, 520 U.S. at 930.

[35]*Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988) (citing *Loudermill*, 105 S. Ct. at 1495, other internal citations omitted).

[36]813 F.2d 709, 716 (5th Cir. 1987) (citing *Loudermill*, 105 S. Ct. at 1495–96) (emphasis added).

10

In this case, Kermode was initially informed that his termination was effective immediately.  But the next day he received a letter placing him on suspension with pay pending the hearing that later occurred.  Defendants argue that the hearing was a post-termination hearing.  Kermode seems to take the same position at times but also observes that the deprivation occurred after the hearing when Jones rejected the Committee's recommendation and terminated Kermode's employment.[37]

Separation with pay is not the same as termination.  The Supreme Court has observed that "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem [of providing a pre-termination hearing] by suspending with pay."[38]  So too in *Schaper*, the Fifth Circuit observed that no pre-hearing deprivation occurred because the governmental employee remained on payroll.[39]  And in *Thibodeaux v. City of Opelousas*, the Fifth Circuit disregarded an initial termination letter that

---

[37]Kermode observes this Court's prior order stating that his employment was terminated September 25, 2008, without hearing.  But that ruling occurred at the Rule 12(b)(6) stage, and the record presents a different story.

[38]*Gilbert*, 520 U.S. at 929 (citing *Loudermill*, 470 U.S. at 544–45).

[39]813 F.2d at 714 n.5 (citing *Loudermill*, 105 S. Ct. at 1495); *see also Luellen v. City of E. Chi.,* 350 F.3d 604, 615 (7th Cir. 2003) ("Using *Loudermill* and *Gilbert* as our guides, we cannot conclude that the lack of pre-suspension hearing in this case violated due process" where suspension was with pay); *Mosely v. N. Va. Cmty. Coll.*, 129 F.3d 1259, at *2 (4th Cir. 1997) (unpublished table decision) (holding that "because he was suspended with pay, Mosley was not entitled to a pre-termination hearing"); *Gray v. Laws*, 51 F.3d 426, 438 (4th Cir. 1995) (finding no due process violation where plaintiff was suspended with pay pending investigation and appealed termination decision); *Brewer v. Chauvin*, 938 F.2d 860, 866 (8th Cir. 1991) (interpreting *Loudermill* to require "an opportunity to respond to charges against him before cessation of his pay.").

was quickly superceded by a letter rescinding the termination pending hearing.[40]  Kermode's employment was terminated December 12, 2008—after the hearing.

The question becomes whether Kermode received an adequate pre-termination hearing. There is no dispute that a lengthy hearing occurred.  But a question of fact remains whether Kermode received all of the process he was due.

Due process requires that "[t]he tenured public employee [receive] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[41]  Kermode first contends that he never received notice of the factual basis for the charges against him.[42]  Kermode was informed that he faced discharge due to "malfeasance, contumacious conduct *and* for cause related to your continued harassment of a student."[43]  The letter itself would not satisfy the *Loudermill* requirements as the description of the alleged offenses is vague and there is no discussion regarding the evidence against him.[44] Kermode did, however, receive some oral notice which informed him that the student involved was Park.  He was also told that his emails with her formed the basis of the recommendation.

---

[40]250 F.3d 740, at *2 (5th Cir. 2001).

[41]*Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988) (citing *Loudermill*, 105 S. Ct. at 1495, other internal citations omitted).

[42]*See*, *e.g.*, Pl.'s Mem. [87] at 5 n.2; *id*. at 18.

[43]Pl.'s Resp. [84] Ex. 4 (emphasis added).

[44]*See Page*, 837 F.2d at 239 (reversing summary judgment and holding that "[e]ffective notice must convey the specific reasons for termination").

There remains a jury question, however, whether UMMC ever explained the "malfeasance" and "contumacious conduct" charges.[45]  Record evidence suggests that Kermode sought an explanation that was never provided,[46] and the way the suspension letter is written, it appears that these charges were separate from the alleged harassment.  That possibility takes root when viewed in light of Turner's testimony.   When asked why Kermode was fired, Turner first mentioned that he allowed "his wife to become involved in matters in the laboratory.  He allowed his wife to confront the student, not just once, but twice . . . ."[47]  Although the record reflects no notice of this issue, a question exists whether it influenced Jones's ultimate decision.[48]  Even after the hearing, Kermode wrote a long letter to Jones pleading his case, but it does not appear that he knew his wife's involvement was under consideration.[49]

Second, Kermode argues that three witnesses met with the Committee in private.[50]  Similarly, Kermode argues that he never had a chance to hear and confront Park although she was interviewed as part of the investigation leading to the termination recommendation.[51]  In

---

[45]*See Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 682–83 (5th Cir. 1986) (holding that list of infractions was "vague and fail[ed] to set out the specific circumstances of the claimed misdeeds.  At the very least, these vague charges permit conflicting inferences as to whether Wells received sufficient notice of the charges against him. The entry of summary judgment was therefore in error.").

[46]Kermode Dep. at 28-29.

[47]*See* Turner Dep. at 11; *see also* Pl.'s Resp. [84] Ex. 8, 30(b)(6) Dep. at 32 (confirming that Human Resources interviewed Park regarding parking lot incident).

[48]*See*, *e.g*., Jones Dep. at 5 ("There was a decision made before it came to me[,] and I affirmed the decision that others had made.").

[49]Defs.' Mot. [72] Ex. LL.

[50]Kemode Dep. at 30.

[51]Pl.'s Mem. [87] at 6; UMMC 30(b)(6) Dep. at 32.

13

*Wells v. Davis Independent School District*, the Fifth Circuit observed, "When an administrative termination hearing is required, federal constitutional due process demands either an opportunity for the person charged to confront the witnesses against him and to hear their testimony or a reasonable substitute for that opportunity."[52]  A question of fact exists as to whether Kermode had that opportunity or a reasonable substitute.

Third, there is a jury question whether UMMC adequately provided an explanation of its evidence.  According to Kermode, he was merely told that his emails formed the basis of the decision.  Kermode was arguably on notice of the harassment charge and how the emails might support the contention.  But he states that other evidence and witnesses were offered during the hearing.  As stated in *Wells*, "[i]t is only when he was not present when [witnesses] were heard that such measures [*e.g.*, notice of the names of and summary of the testimony of witnesses] are called for."[53]

Fourth, there is at least a jury question whether the post-termination process remedied the pre-termination issues.  Defendants rely heavily on the Committee hearing as providing sufficient post-termination process.[54]  But that hearing occurred before the deprivation.  And although Jones testified that he reviewed the hearing record at length, he ultimately accepted the decision reached before the hearing.  In this sense, the case differs from those where a minimal hearing occurs before the termination followed by a "full hearing" later.[55]  If UMMC relied on

---

[52]793 F.2d at 683.

[53]*Id*.

[54] *See* Defs.' Mem. [91] at 7.  The issue is not presented in the *Parratt/Hudson* context. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

[55]*Schaper*, 813 F.2d at 716.

evidence for which Kermode received no notice, then his opportunity to be heard by Jones may have been affected.[56]

This Court must review the evidence in a light most favorable to the non-moving party—Kermode.  When doing so, it appears that a material question exists as to whether he received adequate notice, an explanation of the evidence, and a full opportunity to be heard.  As such, the Motion is denied as to the Kermode's due-process claim for prospective-injunctive relief in Count II.

### 2.    Substantive Due Process

Although the issue could be revisited at directed verdict, the Court declines Defendants' motion to dismiss the substantive due process claim based on the current record.  "To succeed with a claim based on substantive due process in the public-employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious."[57]

As Defendants correctly note, all rights are not created equal under the substantive due process analysis.[58]  In particular, state-created rights are treated differently from constitutionally protected rights.  In this case, Kermode seems to assert both, but the primary right addressed in the memoranda is the property interest in continued employment which he believes was taken without proper procedure.  In such cases, the Fifth Circuit's substantive-due-process analysis often includes—and is sometimes dependent upon—whether the procedure satisfied due process

---

[56]*C.f.*, *Wells*, 793 F.2d at 683 (finding no due process violation where the adjudicator acts "on the sole basis of testimony" given before the employee during the hearing).

[57]*Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

[58]Defs.' Mem. [68] at 21.

such that the decision was not arbitrary and capricious.[59]  The parties have not addressed this issue specifically, and the Court is reluctant to say more without the benefit of briefing.  Having found a jury question on procedural due process, the Court likewise carries the substantive due process issue over for trial.[60]

### 3.      Liberty Interest in Reputation

Kermode asserts a § 1983 claim based on deprivation of his liberty interests.  He cites

*Wells v. Hico Independent School District* which provides a good summary of the law:

> To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability" that forecloses "freedom to take advantage of other employment opportunities."  *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972).  *See Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983).  Mere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest.  *Roth*, 408 U.S. at 574 n.13.  *Dennis v. S. & S. Consolidated Rural High School District*, 577 F.2d 338, 340 (5th Cir. 1978). ("[M]ere nonrenewal of a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty.").  Nor is reputation alone a constitutionally protected interest, even though state law may create an action for defamation.  *Paul v. Davis*, 424 U.S. 693 (1976).  Rather, the stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal at issue here, though loss of a property interest (such as tenured employment) is not required.  *Dennis*, 577 F.2d at 341-42; *Wells*, 711 F.2d at 676 (the stigmatization must be "in or as a result of the discharge process").[61]

---

[59]*See, e.g.*, *Schaper v. City of Huntsville*, 813 F.2d 709, 718 (5th Cir. 1987); *Pastorek v. Trail*, 248 F.3d 1140, at *5 (5th Cir. 2001) (unpublished table decision); *Shearer v. Bowen*, 216 F.3d 1080, at *8 (5th Cir. 2000) (unpublished table decision).

[60]The Court also notes that this portion of Defendants' Memorandum relies heavily on the emails and other correspondences attached to their motion.  But Defendants never establish that the exhibits are true and correct copies of the documents upon which they relied.  In this sense, the exhibits are not authenticated and cannot be considered.  *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 192 (5th Cir. 1991) (stating that summary judgment evidence must be authenticated).

[61]736 F.2d 243, 256 (5th Cir. 1984) (parallel cites omitted).

But *Wells* has another requirement Kermode ignores.  To state a claim, "[t]he employee must also show that the governmental agency has made or is likely to make the . . . stigmatizing charges public in any official or intentional manner, other than in connection with the defense of [related legal] action."[62]  As Defendants correctly note, Kermode's Memorandum merely describes the legal standard without directing the Court to any record evidence supporting this element.  And the Court's own review of the record failed to uncover evidence sufficient to create a jury question regarding publication of false and stigmatizing charges.  The claim is therefore dismissed.

4.      First Amendment Claim

Kermode likewise seeks damages under § 1983 for violation of his First Amendment Rights.  In his Memorandum, Kermode explains his First Amendment claim as follows:

> The United States Supreme Court "has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State.  *E.g., Pierce v. Society of Sisters*, 268 U.S. 510, 534-535 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)."  *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).  Whether UMMC violated the plaintiff's First Amendment rights to association, is likewise a question of fact.[63]

Although he makes a few references to the term "First Amendment" in the balance of his Memorandum, Kermode never explains exactly how Defendants violated his First Amendment rights.  As previously noted, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"[64]  Here, Kermode has

---

[62]*Id.* (internal quotation marks omitted).

[63]Pl.'s Mem. [87] at 26 (parallel cites omitted).

[64]*Celotex*, 477 U.S. at 324 (citation omitted).

17

merely observed that the Bill of Rights protects citizens and that he claims a First Amendment violation.  Without more, the Court is compelled to find that he has not met his burden under Rule 56.[65]

      C.      Defendant Farley

Defendant Farley is the lone defendant facing individual capacity claims.[66]  For the reasons previously stated, all official-capacity claims based on state law and for monetary damages are dismissed.  As for the individual-capacity claims, this Court previously granted portions of Farley's Motion to Dismiss based on qualified immunity and immunity under the MTCA.[67]  The only state-law claims that survived Farley's motion are (1) invasion of privacy (Count V); (2) intentional interference with contract (Count VI); (3) defamation (Count VII); and (4) civil conspiracy (Count VIII).[68]

      1.      Invasion of Privacy

Kermode states in his Memorandum that "Dr. Farley intentionally intruded upon the solitude or seclusion of Dr. Kermode by bringing his relationship with his wife into the 'public arena.'"[69]  The only intrusion mentioned is that Farley told Park that Kermode was having problems with his marriage.

---

[65]*See TIG Ins.*, 276 F.3d at 759 (observing that unsupported assertions are not sufficient to create a question for trial).

[66]Am. Compl. ¶ 4.

[67]July 2, 2010 Order [38].

[68]It does not appear that the Order addressed the invasion-of-privacy claim.

[69]Pl.'s Mem. [87] at 30.

Intrusion into the solitude or seclusion of another is one of the four recognized theories of recovery under the invation-of-privacy umbrella.[70]

> [T]o recover for an invasion of privacy, a plaintiff must meet a heavy burden of showing a substantial interference with his seclusion of a kind that would be highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object.  Further, the plaintiff must show some bad faith or utterly reckless prying to recover on an invasion of privacy cause of action.[71]

Assuming these facts fit the theory, Kermode has not met his heavy burden on the first prong of the test because he brought his wife into the "public arena."  The following facts are not disputed in the record:  (1) Kermode agreed to take Park to the Gordon Research Conference where the leading authorities in Park's chosen field would meet; (2) Kermode did not tell his wife that he was taking Park; (3) when Kermode's spouse learned of the conference, she was "very angry with [him]";[72] (4) Kermode's wife asked Park to meet her in a parking lot after a dinner party and confronted her about the conference; (5) Kermode allowed his wife to veto Park's invitation to attend the Gordon Research Conference; (6) Kermode forwarded an email from his wife to Park regarding the dispute; (7) Kermode disclosed the conflict to another student, Burke, and informed her that his wife was "upset."[73]  Under the circumstances, Kermode has failed to create a record sufficiently demonstrating a jury question on whether a "substantial interference with his seclusion" existed.

---

[70]*Deaton v. Delta Democrat Publ'g Co.*, 326 So. 2d 471, 473 (Miss. 1976).

[71]*Plaxico v. Michael*, 735 So. 2d 1036, 1039 (Miss. 1999) (citations and internal quotation marks omitted).

[72]Kermode Dep. at 94.

[73]Burke Aff. ¶ 11.

2.      Intentional Interference with Contract

"Tortious interference with contract occurs when one causes another to breach a contract with a third person."[74]  To prevail, a plaintiff must establish the following:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); and (4) that actual damage or loss resulted.[75]

In this case, Defendant Farley invokes immunity under the MTCA without relevant supporting authority.  But as the Court previously ruled, the claim is malice-based and not subject to immunity.[76]

The parties then focus on the "unlawful purpose" prong of the test.  According to Kermode's Memorandum, Farley sought revenge for reasons even Kermode finds insufficient. According to his Memorandum, Kermode was critical of a hiring decision involving Farley.[77] But when asked during his deposition whether this served as motivation for Farley to act, Kermode testified, "No, I don't know that it was a motivation.  I'm just saying that was a dispute.  You asked me about that [disputes between the two]."[78]  Kermode also testified that

---

[74]*McBride Consulting Serv., LLC v. Waste Mgmt. of Miss., Inc*., 949 So. 2d 52, 55 (Miss. Ct. App. 2006) (citing *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (¶ 8) (Miss. 1998)).

[75]*Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 (Miss. 2005) (citation omitted).

[76]*See Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009) (holding tortious interference with business relations and contracts not within course and scope of employment under MTCA because proof of malice is required).

[77]Pl.'s Mem. [87] at 29.

[78]Kermode Dep. at 51.

Farley—who met repeatedly with Park and Kermode and was privy to the email

exchanges—simply made a "judgment" that he believed Park's story that Kermode would not

abide by her wishes to be left alone.[79]  He suggests that Farley should have investigated further,

but if, as Kermode states, Farley believed Park's story, then no malice would be possible.  And

Park's story—that Kermode tried to persuade Park after her decision is not disputed.  For

example, Kermode never addresses Burke's declaration that Kermode told her he planned to

"continue emailing" Park to convince her to return despite knowing "he was not supposed to try

to talk to her."[80]  Similarly, Kermode testified that he contacted Park after what he perceived to

be her final decision.[81]

No reasonable juror could find that the hiring decision constituted a basis for malice

when Kermode himself stated under oath that he did not believe that it was.  Kermode offers no

other response to this portion of Defendants' Motion, and summary judgment is therefore proper.

3.    Defamation

Kermode contends that Defendant Farley defamed him.  To establish defamation,

Kermode must prove the following:

(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged
publication to a third party; (3) fault amounting at least to negligence on the part
of the publisher; and, (4) either actionability of the statement irrespective of
special harm or the existence of special harm caused by the publication.[82]

---

[79]*Id.* at 49.

[80]Burke Aff. ¶ 12.

[81]Kermode Dep. at 57.

[82]*Blake v. Gannett Co., Inc*., 529 So. 2d 595, 602 (Miss. 1988) (citing *Chatham v. Gulf
Publ'g. Co., Inc*., 502 So. 2d 647, 649 (Miss. 1987)).

In his Memorandum, Kermode justifies the defamation claim by stating that "Dr. Farley made several statements to Helen Turner, Jim Dorn and other faculty and staff claiming that Dr. Kermode 'harassed Ms. Park,' and that he had been fired from UMC even before he had a due process hearing."[83]  Starting with the alleged statements to "other faculty and staff," the record is not sufficient to sustain the claim.  Although not clarified in his Memorandum, Kermode's deposition testimony demonstrates that these individuals were the ones who allegedly heard the statement that he was fired before he was.[84]  More specifically, Kermode testified that he spoke with a secretary who believed his employment was terminated before the hearing.  Kermode then speculated that Farley must have published the information.[85]  Kermode carries the burden under Rule 56(c) to identify specific record evidence creating a genuine issue for trial—speculation is not sufficient.[86]  His vague reference to "other" unidentified "faculty and staff" learning about the termination falls short.

Turning to Farley's alleged statement to Dorn and Turner, Kermode contends that Farley said Park had been harassed.  Farley argues that the statement is true, and "[t]ruth is an absolute defense to a defamation lawsuit in Mississippi."[87]  "[A]ll that this Court requires is that the statements be 'substantially true.'"[88] And "the plaintiff in a defamation action bear[s] the burden

---

[83]Pl.'s Mem. [87] at 27.

[84]Kermode Dep. at 53–54.

[85]Kermode Dep. at 53–54 (stating that secretary heard he was terminated and speculating that Farley was "most likely source").

[86]*TIG Ins. Co.*, 276 F.3d at 759.

[87]*Journal Publ'g Co. v. McCullough*, 743 So. 2d 352, 360 (Miss. 1999).

[88]*Blake*, 529 So.2d at 603 (citations omitted).

22

of proving falsity."[89]  Finally, "whether the offending words are defamatory may be decided by the trial court without submission to the jury."[90]

In this case, the alleged statements to Dorn and Turner—that Kermode "harassed" Park—were substantially true.  Kermode essentially argues that "characteriz[ing]" his conduct as "harassment" was false and defamatory.[91]   Excerpts from the hearing transcript reveal that Farley   did not use the term to suggest sexual harassment.[92]  Instead, he used the term to generally describe Park's concern that Kermode would not stop contacting her.[93]  Significantly, Kermode—who carries the burden of proving falsity—has offered no evidence rebutting the assertion that Park complained about Kermode's continued contact.  And as noted above, there is no dispute in this record that Kermode attempted to change Park's mind about leaving his lab, that he expressed an intent to continue trying despite knowing that he was supposed to stop,[94] and that he made at least one attempt at persuasion after what he considered to be her final decision.[95]  Webster's defines "harassment" as "to annoy persistently."  *Merriam-Webster's*

---

[89]*Id.*

[90]*Armistead v. Minor*, 815 So. 2d 1189, 1194 (Miss. 2002) (affirming summary judgment and collecting cases).

[91]Pl.'s Mem. [87] at 4.

[92]Hearing Trans. at 97.

[93]*Id.*  Defendants did not suggest that the statements were opinion.  *See Ferguson v. Watkins*, 448 So. 2d 271, 276 (Miss. 1984) (discussing opinion privilege).

[94]Burke Aff. ¶ 12.

[95]Kermode Dep. at 57.

*Collegiate Dictionary* 567 (11th ed. 2007).  Given this record, Farley's characterization was

substantially true.[96]

Even if the statement was not substantially true, a qualified privilege exists in the

employment context as discussed in *Staheli v. Smith*.[97]  The qualified privilege

> is restricted both as to scope of and motivation for the communication. . . .  [A]
> qualified privilege exists between those directly interested in the same matter and
> in the absence of malice no cause of action lies.  When qualified privilege is
> established, statements or written communications are not actionable as
> slanderous or libelous absent bad faith or malice if the communications are
> limited to those persons who have a legitimate and direct interest in the subject
> matter.  Further, . . . [i]f publication is made to persons outside the circle—those
> not having a legitimate and direct interest in the subject matter of the
> communication—the protection of the privilege may not be invoked.[98]

Kermode asserts a question of fact as to whether the privilege existed, but no reasonable

juror could find that Dorn and Turner lacked a direct interest in the matter.  Dorn was the Interim

Director of Human Resources, and Turner was Assistant Vice Chancellor.  Both were among the

administrators involved in the termination recommendation.  As for "bad faith or malice,"

Kermode again offered speculative observations about Farley's motives which, as addressed

above, are not sufficient to create a question for the jury.[99]  Farley's privileged statements are

---

[96]In the facts section of his Memorandum, Kermode argues that Farley and Dorn told the
Committee that Kermode "made statements of a *quid pro quo* nature."  Pl.'s Mem. [87] at 7.  The
argument suggests sexual harassment, but Kermode offers no cite for this factual assertion, and
the Court is not required to search for record evidence supporting it.  *Jackson v. Cal-W.
Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010).  Nevertheless, the unrebutted record
evidence demonstrates that sexual harassment was never the issue.  Jones Dep. at 10 ("There was
not any indication of sexual harassment.").

[97]548 So. 2d 1299, 1305–06 (Miss. 1989) (affirming summary judgment of defamation
claim against university faculty who recommended against tenure).

[98]*Id.* (citing *Bush v. Mullen*, 478 So. 2d 313, 314 (Miss. 1985) (internal citations and
quotation marks omitted)).

[99]*See* Kermode Dep. at 49–51.

consistent with the record.[100]  The Court concludes that Kermode's defamation claim fails to survive Rule 56(a) scrutiny.

> ### 4.   Civil Conspiracy

Although the Amended Complaint includes a claim of civil conspiracy, Kermode does not address the claim, and therefore has abandoned it in his Response.  Regardless, the record does not survive Defendants' summary-judgment motion.  Civil conspiracy requires proof of "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully."[101]  The claim fails absent proof that Farley had such intent,[102] and there is no record evidence regarding anyone else's intent.

> ### D.   Cross-Motion for Summary Judgment

Kermode's Cross-Motion for Summary Judgment was untimely.  Regardless, the Court finds questions of fact that preclude summary judgment in his favor.

## IV.   Conclusion

Kermode's claim survives to the extent of the official capacity claims for prospective-injunctive relief based on alleged violation of his right to procedural and substantive due process.  All other claims are hereby dismissed.

---

[100]Kermode has at other times challenged the veracity of other statements, such as whether a "purported 'confrontation'" occurred between Park and his wife.  Kermode Aff. ¶ 9.  But as Defendants observe, these statements are undisputed in the present record.  *See* Defs.' Reply [91] at 10–11.

[101]*Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999) (rejecting claim of conspiracy to tortiously interfere with contractual relations where the plaintiff "failed to show that [the defendant] maliciously interfered with her employment"); *see also Ryals v. Pigott*, 580 So. 2d 1140, 1156 (Miss. 1990) (no agreement to interfere with business enterprise could be actionable as civil conspiracy because alleged purpose of agreement did not involve conduct which would itself have been an actionable tort).

[102]*Levens*, 733 So. 2d at 761; *Ryals*, 580 So. 2d at 1156.

Finally, the Court notes that the parties cancelled the previously scheduled settlement conference.  The parties are hereby ordered to mediate this matter before Magistrate Judge Ball within thirty days of this Order.  If settlement is not reached, the parties shall contact the Court's courtroom deputy to set the matter for pretrial conference.

**SO ORDERED AND ADJUDGED** this the 15th day of September, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE